UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LATIFAH HEMMINGS,

       Plaintiff,

v.                           Case No.  8:23-cv-977-SPF

KILOLO KIJAKAZI,
Commissioner of the Social
Security Administration,[1]

       Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.     Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 65–92). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 93–94, 127–28).  Plaintiff then requested an administrative hearing (Tr. 174).  Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 30–64).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021, and is substituted as Defendant in this suit pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 15–24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1978, claimed disability beginning May 32, 2019 (Tr. 79). Plaintiff obtained a high school education (Tr. 23). Plaintiff's past relevant work experience included work as a janitor (Tr. 22–23). Plaintiff alleged disability due to a heart condition, depression, anxiety, high blood pressure, post-traumatic stress disorder, and anemia (Tr. 79).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2024 and had not engaged in substantial gainful activity since May 31, 2019, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: coronary artery disease status post stent placement; anemia; obesity; post-traumatic stress disorder; and depression (Tr. 18). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that she "can occasionally climb ladders, ropes and scaffolds and occasionally climb ramps and stairs. The claimant can frequently kneel and crouch. The claimant must avoid concentrated

exposure to hazards. The claimant is limited to simple, routine tasks with occasional interaction with others and no fast paced work production requirements." (Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform her past relevant work (Tr. 22). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a marker, mail sorter, and router (Tr. 23–24). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 24).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological

abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R. §§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

4

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.    Analysis**

Plaintiff argues here that the ALJ erred by (1) relying on a response to a vague or incomplete hypothetical; (2) failing to comply with Social Security Ruling ("SSR") 00-4p and resolve an apparent conflict with respect to the mail sorter job; and (3) relying on the VE's testimony about the amount of router jobs that exist in the national economy. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    Vague or Incomplete Hypothetical

First, Plaintiff argues that the ALJ erred in relying on a response to a vague or incomplete hypothetical. The ALJ must pose an accurate hypothetical that accounts for all the claimant's impairments. *Wind v. Barnhart,* 133 F. App'x 684, 694 (11th Cir. 2005); *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985). Although the ALJ's hypothetical must comprehensively describe a claimant's limitations, it need not include "each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Instead, the ALJ must include those limitations he or she finds credible. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (ALJ does not have to include limitations found not credible in hypothetical to the VE and submits to the expert only those supported by objective evidence of record).

Here, the ALJ asked the VE to assume the following hypothetical individual and limitations:

> [A] hypothetical individual of the claimant's age and education as well as the past jobs you just described. Further assume that the hypothetical individual would be limited to light work as that term is defined by the <u>Dictionary of Occupational Titles</u> with the additional restrictions that the individual would be limited to no more than occasionally climbing ladders, ropes, or scaffolds. They could frequently climb ramps and stairs, kneel, and crouch. They would need to avoid concentrated exposure to extremes in heat, confined spaces, as well as workplace hazards. I'm defining workplace hazards as moving mechanical parts and unprotected heights. [ . . . ] [T]he individual would be limited to simple, routine tasks with no more than occasional interaction with the public. Additionally, there would be [] no jobs that could have fast-paced work requirement[s].

(Tr. 54–55). The VE testified that such an individual could not perform the job of janitor (Plaintiff's past relevant work) but could work as a marker (with 292,000 jobs nationally),

mail sorter (with 104,000 jobs nationally), and a router (with 50,000 jobs nationally) (Tr. 55–56).

Plaintiff argues that the ALJ's hypothetical to the VE was vague or incomplete because the terms "fast-paced work" and "occasional interaction with others" are "subjective and vague" such that it is "impossible to know if there was a meeting of the minds" between the ALJ and the VE (Doc. 22 at 7–8). But there is no indication in the record that the VE did not understand any of the phrases or limitations in the ALJ's hypothetical. The VE did not ask for clarification, seek additional guidance, or show any uncertainty. "Courts in this circuit routinely reject the argument that the limitation is vague where, as here, there is no indication that either the ALJ or the VE misunderstood its plain meaning." *Nardelli v. Comm'r of Soc. Sec.*, No. 8:20-cv-1382-JSS, 2021 WL 8972947, at *4 (M.D. Fla. Sep. 1, 2021) (quoting *Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-620-J-PDB, 2020 WL 5810219, at * 4 (M.D. Fla. Sept. 30, 2020) (collecting cases)); *see also Williams v. Barnhart,* 140 F. App'x 932, 937 (11th Cir. 2005) ("Although the ALJ failed to specify the frequency that Williams needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at Williams's own volition.").

Plaintiff cites no authority for the proposition that the terms "fast-paced work" and "occasional interaction with others" are vague in this context. Indeed, Plaintiff concedes that it is "common practice" for ALJs to assign these limitations (Doc. 22 at 7). The Court finds these terms to be sufficiently clear, as the ALJ and and VE both clearly understood their plain meaning. *See Lykes v. Colvin*, No. 2:15-cv-524-CLS, 2015 WL 9268146, at *4

(N.D. Ala. Dec. 21, 2015) ("Finally, the limitations the ALJ placed on claimant's ability to do fast-paced work appear to have been sufficiently clear and specific for the vocational expert to determine their effect on claimant's ability to perform jobs existing in significant numbers in the national economy."); *cf. Floro v. Comm'r of Soc. Sec.*, No. 6:12-cv-928-Orl-GJK, 2013 WL 4520463, at *6 (M.D. Fla. Aug. 26, 2013) ("Given the reasonable implication of the sit/stand option and lack of any evidence rebutting that implication, the Court finds that the VE's testimony identifying three jobs Claimant can perform, given his limitations, provided substantial evidence to support the ALJ's finding that there is significant work that Claimant can perform in the national economy.").

Moreover, if Plaintiff was concerned about the VE's understanding of the hypothetical, her representative could have cross-examined the VE about this at the hearing.  He did not.  Accordingly, the ALJ posed a complete hypothetical to the VE, and the VE's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is not disabled.  *See Denomme v. Comm'r of Soc. Sec.*, 518 F. App'x 875, 879 (11th Cir. 2013) (stating that, because the plaintiff's representative "failed to ask whether her ability to perform these jobs would be compromised by limitations in interacting with coworkers and supervisors," the ALJ presented a complete hypothetical to the VE).

### B.  Apparent Conflict

Next, Plaintiff argues that the ALJ failed to comply with SSR 00-4p with respect to the job of "mail sorter" because there is an apparent conflict between the Dictionary of Occupational Titles ("DOT") description of the job and the VE's testimony that a

hypothetical individual who could not perform jobs with fast-paced work requirements could perform the job.

An ALJ has an affirmative obligation to identify and resolve "apparent conflicts" between the VE testimony and the DOT, otherwise the ALJ's decision is not supported by substantial evidence. *Washington*, 906 F.3d at 1362.   Social Security Ruling 00-4p explains:

> When vocational evidence provided by a VE or [vocational specialist ("VS")] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

2000 WL 1898704, at *4.[2]  This means it is not enough for the ALJ to simply ask the VE if there is an apparent conflict; the ALJ must make a "meaningful investigatory effort" to identify or uncover any *apparent* conflicts, explain, and resolve them. *Washington*, 906 F.3d at 1364. The court in *Washington* goes on to explain "apparent" means that conflict is "reasonably ascertainable or evident" and "seemingly real or true, but not necessarily so." *Id.* at 1366 (citation omitted).

---

[2]  Social Security Rulings do not have the force and effect of the law or regulations but are to be relied upon as precedents in determining other cases where the facts are basically the same.  *Heckler v. Edwards*, 465 U.S. 870, 874 n. 3 (1984); *see also Dickson v. Comm'r of Soc. Sec.*, 2014 WL 582885, *4 (M.D. Fla. Feb. 13, 2014) (quoting *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010)) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.  Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference…").

Here, the VE testified that a hypothetical individual of Plaintiff's age and education, with Plaintiff's past work experience and RFC—including the requirement that jobs with "fast-paced work requirement[s]" be excluded—could perform the positions of mail sorter, marker, and router (Tr. 54–57). The VE testified that his testimony was consistent with the DOT, but noted that that the DOT is "silent on pace and tandem positions." (Tr. 56). He then explained that his "answer for that is based on a reasonable degree of vocational certainty based on my ongoing education, placement, and experience." (Tr. 57).

Plaintiff argues that there is an apparent conflict between the DOT and the VE's testimony because the DOT provides that the position of mail sorter "may be designated according to work station as conveyor belt package sorter" and the VE testified that Plaintiff could perform this job, despite the limitation that Plaintiff could have "no fast paced work production requirements." *See* Routing Clerk, DOT § 222.687-022, 1991 WL 672133 ("Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.)."). In support of her argument, Plaintiff cites to *Dillon v. Saul*, where the court found an apparent conflict between DOT job descriptions with "the use of conveyors or conveyor belts" and a "limitation to jobs not requiring a production rate or pace work comparable to that of an assembly line where one worker's pace affects the

entire production process."   No. 8:19-cv-1277-T-AEP, 2020 WL 5640770, at *4 (M.D. Fla. Sept. 22, 2020).

In response, the Commissioner argues that no apparent conflict exists between the DOT and the VE's testimony.   The Commissioner relies on *Christmas v. Comm'r of Soc. Sec.*, 791 F. App'x 854 (11th Cir. 2019).   The plaintiff in *Christmas* alleged the ALJ had a duty to resolve an apparent conflict with the DOT because the VE testified the plaintiff could perform the job of fruit distributor. *Id.* at 857.   The plaintiff argued this was a "fast-paced assembly line job," for which her RFC provided a limitation. *Id.* The court noted that the DOT did not discuss the pace of the fruit distributor job. *Id.*; *see also* Fruit Distributor, DOT § 921.685-046, 1991 WL 688088 ("Tends conveyor to distribute citrus fruit to packers' work stations: Tends conveyor, patrols catwalks beside conveyors and monitors flow of fruit passing to each packing station.").   The court held, "*Washington* does not require the ALJ to draw inferences about job requirements that are unsupported by the DOT's text and then resolve conflicts between the VE's testimony and those unsupported inferences." *Id.; cf. Byrd v. Kijakazi*, No. 8:20-cv-875-AEP, 2021 WL 3855950, at *5 (M.D. Fla. Aug. 30, 2021) (concluding that no conflict exists between the VE's testimony and the DOT where the DOT is silent regarding the subject limitation).[3]

---

[3] The Commissioner also argues that, "even if the ALJ erred, because the ALJ identified two other jobs with significant numbers, the error would be harmless." (Doc. 25 at 11). But the ALJ did not find that there were a "significant number" of marker and router positions.   Instead, the ALJ found that, cumulatively, the jobs of marker, mail sorter, and router existed in significant numbers in the national economy (Tr. 23–24).   Thus, this argument is rejected as inconsistent with *Viverette v. Commissioner of Social Security*, 13 F.4th 1309, 1318 (11th Cir. 2021) ("Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ].") (quoting *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986)).

Thus, the issue is whether the alleged conflict presented is an apparent conflict, or whether an inference is required to find a conflict between the DOT and VE's testimony. The Court finds that, as in *Christmas*, an inference is necessary in order to find a conflict between the DOT and the VE's testimony.  The mere potential presence of a conveyor belt does not render the position fast-paced.[4]  *See, e.g.*, *Omar R. v. Saul*, No. 2:19-cv-04147-AFM, 2020 WL 1506906, at *4 (C.D. Cal. Mar. 30, 2020) ("The ALJ only precluded Plaintiff from performing fast-paced production work, not work involving a conveyor belt. Nothing in the DOT description of the job conveyor feeder-offbearer indicates that it requires fast-paced work. Plaintiff's contention is based upon the unfounded premise that work involving a conveyor necessarily involves fast-paced production."); *Garcia v. Colvin*, No. ECDV 12-1369 AJW, 2016 WL 3268861, at *3 (C.D. Cal. June 6, 2016) ("The fact that the job of laundry laborer might incorporate some conveyor belt work does not necessarily translate into the type of fast-paced work from which plaintiff is precluded.") (quotation omitted); *James W. v. Kijakazi*, No. 21-cv-440-JFJ, 2023 WL 1861214, at *6 (N.D. Okla. Feb. 9, 2023) (rejecting argument that "presence of a conveyor" indicates that job is fast-paced in nature"); *Shader v. Colvin*, No. 3:14-29-KKC, 2015 WL 476311, at *8 (E.D. Ky. Feb. 5, 2015) ("[W]ork on a conveyor belt or table is not exclusively fast-paced or assembly work.").

---

[4] While the Court acknowledges that the *Dillon* court came to a different conclusion, the *Dillon* court acknowledged the holding in *Christmas* (and found its analysis to be persuasive), but nonetheless found remand to be appropriate "in this instance given the apparent conflict with all of the jobs identified by the VE." 2020 WL 5640770, at *4 n.3.

In any event, because the DOT does not address all the limitations the ALJ included in the hypotheticals he presented, including pace, the ALJ asked the VE "is your testimony consistent with the Dictionary of Occupational Titles" (Tr. 56). The VE replied that his "testimony is in accordance with the DOT and its companion, but they're silent on pace and tandem positions. And my answer for that is based on a reasonable degree of vocational certainty based on my ongoing education, placement, and experience." (Tr. 57). A VE's own experience is among the bases for reasonable explanations for conflicts. *See Jackson v. Kijakazi*, No. 1:21-00315-N, 2022 WL 4589165, at *11 (S.D. Ala. Sept. 29, 2022) ("However, to the extent there was an 'apparent conflict,' the ALJ resolved it at the hearing by obtaining an explanation from the VE, who stated: '[O]verhead reaching is not specified in the DOT and certainly, that did require me to use my knowledge, training, education, and experience.'"); *see also Feaster v. Astrue*, No. 2:10cv514-WC, 2011 WL 2036628, at *8 (M.D. Ala. May 24, 2011) ("Social Security Ruling 00-4p provides, as an example of a reasonable explanation for a conflict, the instance where '[i]nformation about a particular job's requirements' comes from another source such as 'a VE's . . . experience in job placement or career counseling."). Thus, even if there were a conflict between the VE's testimony and the DOT, the ALJ satisfied his obligation to obtain a reasonable explanation for it.

### C. Router Job

Finally, Plaintiff argues that the ALJ erred in relying on the VE's testimony about the amount of router jobs that exist in the national economy. Specifically, Plaintiff argues that it is "common and obvious" that the router job identified by the VE is obsolete and

does not exist in significant numbers in the national economy.   In support of this proposition, Plaintiff relies on *Kelly P. v. Saul*, No. 5:18-cv-00777-MAA, 2019 WL 3573591, at *5–6 (C.D. Cal. Aug. 6, 2019).   In *Kelly P.*, the court stated that "[r]eviewing courts must be cautious in finding an ALJ's reliance on a VE's testimony about job numbers unjustified because of obsolescence," but then explained that "reviewing courts are authorized to review an ALJ's step five determination for substantial evidence by relying on what is 'common and obvious,' even to non-experts." 2019 WL 3573591, at *5.  The court then stated:

> Here, despite the DOT's apparently outdated language about routers using "standard charts" to determine delivery routes, the ALJ and the VE did not acknowledge the possibility that the description was outdated, which would have provided useful context for how the VE had calculated that 28,000 router jobs exist in the current national economy. Thus, the Court must accept at face value the VE's testimony that 28,000 router jobs, as described by the language of the DOT, exist in the current national economy. To be sure, what is commonly known about the national job market is inadequate to find that the occupation of router, as it is described in the DOT, is completely obsolete. But it is readily conceivable that technological advances in computers and cellular phones have led to the reduction, at least to a modest extent, in the number of router jobs that used to be performed with "standard charts." Even a modest reduction of the 28,000 jobs the VE identified — such a reduction of 15 percent of that number because of technological advances — would mean that the number of available jobs is no longer significant. *See Gutierrez*, 740 F.3d at 529 (holding that 25,000 national jobs was a significant number but remarking that it "presents a close call"). Thus, a reasonable mind would not accept the VE's testimony that there are a sufficient number of router jobs, as they are described in the DOT, in the national economy to constitute a significant number.

2019 WL 3573591, at *6.

As a preliminary matter, this district court opinion from California is not binding on this Court.  To that end, the Court is not persuaded by this analysis.  First, the Court

does not find it to be "common and obvious" that the router job's reference to "standard charts" renders it obsolete.  Regardless, "the [*Kelly P.*] decision, coupled with Eleventh Circuit precedent, does not support Plaintiff's position."  *Brown v. Comm'r of Soc. Sec.*, No. 2:20-cv-446-JES-MRM, 2021 WL 3476405, at *6 (M.D. Fla. June 29, 2021) (rejecting identical argument based on *Kelly P.* and the router position), *report and recommendation adopted*, 2021 WL 3163972 (July 27, 2021).  In *Kelly P.*, the court was bound by Ninth Circuit precedent finding the issue of whether 25,000 jobs constituted a significant number of jobs in the national economy to be a "close call."  The Eleventh Circuit, on the other hand, has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015); *see also Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) ("The ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy is supported by substantial evidence.").

As a result, Plaintiff has not met her burden of establishing that the ALJ erred in relying on the VE's testimony about the amount of router jobs that exist in the national economy.  Accordingly, the decision of the Commissioner will not be reversed on this basis.

## V.    Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

**ORDERED** in Tampa, Florida, on this 22nd day of September 2023.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE